IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JERMAINE R. REVERE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-031 |
| | ) | |
| DIANNE DEES, Deputy Warden of Care & Treatment; SAM ZANDERS, Deputy Warden of Care & Treatment; MS. YAWN, Medical Administrator; and DR. MURRAY CHENEY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at the Fulton County Jail in Atlanta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983 concerning events that occurred at Telfair State Prison ("TSP") in Helena, Georgia. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006). The Court directed Plaintiff to amend his original complaint because of pleading deficiencies, (see doc. no. 9), and the amended complaint is before the Court for screening.

I.  SCREENING OF THE AMENDED COMPLAINT

  A.  BACKGROUND

Plaintiff names the following Defendants: (1) Dianne Dees, Deputy Warden of Care and Treatment at TSP; (2) Sam Zanders, Deputy Warden of Care and Treatment at TSP; (3) Ms.

Yawn, a Medical Administrator at TSP; and (4) Murray Cheney, a doctor at TSP. (See doc. no. 11, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On June 26, 2012, Plaintiff sustained an injury to his left hand and wrist that resulted in surgery to amputate two fingers and repair several deep lacerations. (Id. at 5.) When Plaintiff arrived at TSP on July 19, 2012, he had a cast on his left arm and hand, and on July 30, he had the cast removed at a medical facility in Savannah, Georgia. (Id.) The doctor in Savannah put Plaintiff's left hand in a soft brace and told him orders for physical therapy and a follow up appointment would be sent to TSP. (Id. and Ex. 3.) On August 7, Defendant Cheney and a physical therapist came to Plaintiff's cell for a thirty minute session of exercises with Plaintiff, and Defendant Cheney explained Plaintiff would have two physical therapy sessions per week. (Id. at 5, 7.) Nonetheless, neither Defendant Cheney nor the physical therapist returned for a month and a half, despite Plaintiff's repeated inquiries to nurses and submission of sick call slips. (Id. at 7.) Plaintiff did not have a follow up appointment in Savannah. (Id. at 9.)

When Dr. Cheney returned to Plaintiff's cell near the end of September 2012 to examine Plaintiff's hand, he asked if Plaintiff had been doing the exercises he had been given because although he would try to help Plaintiff during weekly rounds, Plaintiff must do his own therapy. (Id. at 7 and Ex. 1.) The next week, arrangements were made for Plaintiff to be taken to the medical department for his therapy, but the medical department never sent for him. (Id. at 8.) Plaintiff filed a grievance and wrote a letter complaining that he had not received his physical therapy. Defendant Zanders denied the grievance, explaining Plaintiff had been seen by medical staff and instructed on what exercises to do for his hand. (Id. at 9 and Ex. 2.)

Plaintiff then transferred out of TSP for one week to go to court, and upon his return to TSP on October 11, 2012, a physical therapist examined his hand and said Plaintiff "needed physical therapy badly." (Id. at 10.) Plaintiff was then assigned a cell in the medical department, and his physical therapy was to begin the next week. (Id.) However, the air conditioning was too cold for Plaintiff in the medical department, and on October 16, he asked to be moved to another cell. (Id.) Prison officials accommodated Plaintiff's request, but because TSP was on lockdown, Plaintiff could not leave his new cell to attend physical therapy. (Id. at 11.)

The following week, Dr. Cheney told Plaintiff he could not go to physical therapy because he had been masturbating in front of the nurses. (Id.) Plaintiff denied the accusation and pointed out that he had no disciplinary referrals on file for masturbating. (Id.) Plaintiff wrote a letter to Defendant Dees about his inability to get physical therapy and the false accusations about masturbating. (Id. at 11-12 and Ex. 4.) Defendant Dees forwarded Plaintiff's letter to Defendant Yawn, with a notation that if Plaintiff did not have a disciplinary referral for masturbation, "he gets same physical therapy as other inmates." (Id.) However, Defendant Yawn "did not stop Dr. Cheney in his pligh[t] to cover up what he had done." (Id. at 12.) Plaintiff can no longer use his left hand, and he seeks compensatory and punitive damages from each Defendant. (Id. at 6, 12.)

B.     **DISCUSSION**

    1.     **Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as

3

dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim against Defendant Dees.

Plaintiff's amended complaint fails to state a claim against Defendant Dees, a deputy warden of care and treatment, because he is attempting to hold her liable merely because of her supervisory

positions at TSP. In other words, Plaintiff improperly attempts to hold this Defendant responsible for the acts of Defendant Cheney and Defendant Yawn. However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold a supervisor liable, Plaintiff must demonstrate that either (1) she actually participated in the alleged constitutional violation, or (2) there is a causal connection between her actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff alleges he wrote Defendant Dees because "it is [her] job description to see inmates are treated fairly." (Doc. no. 11, p. 9). He states that because this Defendant received a letter from him, she knew "what was going on yet did not do [her] job." (Id. at 12.) Nowhere does Plaintiff allege that Defendant Dees was the individual responsible for making the medical determination as to which inmates need physical therapy, let alone for evaluating Plaintiff's hand and determining whether

5

he needed physical therapy under medical supervision or could perform his exercises by himself as they were explained to him on August 7, 2012.

Likewise, Plaintiff must allege a causal connection between Defendant Dees and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [s]he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff merely alleges that he wrote a letter about missing his physical therapy, and Defendant Dees advocated for Plaintiff by forwarding the letter to Defendant Yawn and noting that Plaintiff should receive physical therapy if the masturbation allegation was false. (Doc. no. 11, Ex. 4.) Plaintiff comes nowhere close to showing a widespread problem with the allegations in his complaint, let alone putting Defendant Dees on notice of such a problem.

6

Moreover, Plaintiff does not show that Defendant Dees was directly involved with Plaintiff's alleged claims simply by alleging she viewed a letter he wrote. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000). Likewise, Plaintiff's allegation that Defendant Dees directed Defendant Yawn to investigate Plaintiff's disciplinary history to determine if he was eligible for physical therapy like other inmates does not suggest that she directed Defendant Yawn to act unlawfully or knew that she would not follow through with the instructions given.

In sum, Plaintiff has not shown Defendant Dees actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against this Defendant, and she should be dismissed from the case. In a companion Order, the Court allows Plaintiff to proceed with his Eighth Amendment deliberate indifference claim against Defendants Cheney, Zanders, and Yawn.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant Dees be **DISMISSED** from this case.

SO REPORTED and RECOMMENDED this 22nd day of October, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA