IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JERMAINE R. REVERE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-031 |
| | ) | |
| DR. DAVID CHENEY, Medical Director, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Hays State Prison in Trion, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case. Before the Court is Defendant's motion for summary judgment. (Doc. no. 48.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, a final judgment be **ENTERED** in favor of Defendant, and this civil action be **CLOSED**.

**I.    PROCEDURAL BACKGROUND**

Because Plaintiff is proceeding IFP, the Court screened Plaintiff's amended complaint in compliance with the IFP statute, 28 U.S.C. §§ 1915(e) and 1915A. The Court allowed Plaintiff to proceed with a claim for deliberate indifference to a serious medical need, based on Plaintiff's allegations that he has not received proper medical treatment for an injury to his left hand sustained in a prison fight. (See doc. nos. 11, 13.) Plaintiff asserts this claim against Defendant David Cheney, a doctor and the medical director at Telfair State Prison ("TSP") during Plaintiff's incarceration there from July 19, 2012, through December 19,

2012.  (Doc. nos. 11, 48-4, Cheney Aff. ¶ 4.)  Plaintiff seeks $900,000 in compensatory damages, as well as $900,000 in punitive damages.  (See doc. no. 11, p. 6.)  Plaintiff had also sued (1) Diane Dees, Deputy Warden of Care and Treatment at TSP, (2) Sam Zanders, Deputy Warden of Care and Treatment at TSP, and (3) Marie Yawn, Health Services Administrator at TSP, but the Court dismissed the claims against these three individuals.  (See doc. nos. 14, 17, 33, 37.)

The case proceeded through the standard discovery period, during which Dr. Cheney took Plaintiff's deposition.  (Doc. no. 48-3, Pl.'s Dep.)  Dr. Cheney argues at summary judgment that, even assuming Plaintiff's injury was an objectively serious medical need, Plaintiff cannot satisfy the subjective component of a deliberate indifference claim.  (See doc. no. 48-1, p. 15.)  Plaintiff argues summary judgment is not appropriate because Dr. Cheney did not follow the recommendation of a doctor who treated Plaintiff prior to his arrival at TSP that Plaintiff should receive face-to-face, bi-weekly physical therapy.  (See doc. no. 51, p. 5.)

Because Dr. Cheney submitted with his summary judgment motion a Statement of Undisputed Material Facts pursuant to Loc. R. 56.1, the Court deems admitted all facts in that Statement which find support in the record and Plaintiff has not properly opposed.  See Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000); Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' statements of material fact admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objection to statement).  However, Dr. Cheney, as movant, continues to "shoulder the initial

2

burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review Dr. Cheney's representation of the record, including Plaintiff's sworn deposition testimony and factually supported opposition to the Statement of Undisputed Material Facts, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. FACTS

On June 26, 2012, Plaintiff was incarcerated at Ware State Prison ("WSP") in Waycross, Georgia. (Pl.'s Dep. 7.) Plaintiff was a member of the gang known as the "Gangster Disciples," and got into a fight with several Hispanic inmates, resulting in Plaintiff being repeatedly stabbed and cut by other inmates. (Id. at 7-9.) Plaintiff's injuries included (1) stab wounds to the abdomen, scalp, and neck, (2) lacerations to the left forearm, wrist, and hand, with multiple tendon and nerve injuries at the forearm level, and (3) multiple injuries to his left hand, including amputation of his left ring finger, near complete amputation of his left middle finger and index finger, and multiple cuts to his left pinky finger. (Id. at 9, 11-13; doc. no. 48-5, Med. Rec. 2-3.) Because of these injuries, Plaintiff was transported from WSP to the emergency room at the Mayo Clinic Health System in Waycross, and then to the Memorial Health University Medical Center in Savannah, Georgia, where he had surgery to repair his injuries. (Pl.'s Dep. 11; Med. Rec. 2-10.) Dr. Benjamin D. Sutker performed the surgery on Plaintiff's left wrist and hand. (Med. Rec. 3-6.)

Following Dr. Sutker's surgery, Plaintiff, who is right-handed, had a cast extending from his left hand to above his left elbow, and after spending several days in the hospital, Plaintiff returned to WSP. (Pl.'s Dep. 12; Med. Rec. 5, 15-16, 68.) On July 19, 2012, Plaintiff transferred from WSP to TSP, and other than a brief trip back to state court for criminal proceedings, Plaintiff stayed at TSP and was under Dr. Cheney's care until December 19, 2012, when he transferred to Smith State Prison ("SSP"). (Doc. no. 11, p. 5; Pl.'s Dep. 17, 30-31; Cheney Aff. ¶¶ 4, 10, 21.)

At all times relevant to this litigation, Dr. Cheney was a licensed doctor serving as the medical director at TSP. (Cheney Aff. ¶¶ 3, 4.) His duties included supervising medical staff, making medical evaluations and assessments of inmates' medical conditions in order to oversee and provide healthcare to inmates, determining what treatments inmates should and may receive, including whether the treatment should be provided in prison or referred to an outside facility, managing chronic illness, prescribing medication, and providing necessary emergency care. (Id. ¶ 5.) Although Dr. Cheney served as the medical director at TSP and all inmates at TSP undergoing medical treatment were under his care, other health care personnel, including nurses, examined inmates, provided medical care, evaluated records, and prescribed medication. (Id. ¶¶ 6, 9.)

As a doctor and the medical director, it is within Dr. Cheney's discretion, based on his professional medical judgment, to determine whether an inmate needs treatment by a specialist or other outside medical provider. (Id. ¶¶ 10-13.) Dr. Cheney had discretion to exercise his independent, professional judgment to determine whether an inmate received a particular medicine, therapy, or other medical treatment recommended by an outside medical

4

provider, and Dr. Cheney was not required to follow orders or prescriptions from outside medical providers. (Id. ¶¶ 14-15.)

Upon Plaintiff's arrival at TSP on July 19, 2012, he was provided with pain medication. (Med. Rec. 18.) On July 30, 2012, Plaintiff was transported from TSP to Savannah for a follow-up appointment with Dr. Sutker, an appointment which had been arranged prior to Plaintiff's arrival at TSP. (Id. at 20-23.) Dr. Sutker removed Plaintiff's cast and staples, and on the office report of the visit, under the heading "Recommendations," it states, "We will have him go into a short arm wrist splint and I have written some therapy orders for the jail. Follow-up in 6 weeks." (Id. at 21.) The "Therapy Script" is a form with blocks filled in next to certain multiple-word phrases, including "Hand/UE Therapy Eval & Treat, 6 wks, B/W, Post Op Protocol." (Id. at 22.) There is nothing written in the box reserved for Special Instructions, and there is no specific list of exercises or therapy activities. (Id.) Rather, blocks are filled in next to two therapeutic exercises, *i.e*, active range of motion ("AROM") and active assisted range of motion ("AAROM"). (Id.) Dr. Cheney received the Therapy Script on August 2, 2012. (Cheney Aff. ¶ 33.) There is no record Plaintiff ever returned for a six-week follow-up. (Id. ¶ 26.)

On August 7, 2012, Dr. Cheney and John A. Martin, a physical therapist, saw Plaintiff in his dormitory to evaluate his hand and formulate a physical therapy plan. (Med. Rec. 24; Pl.'s Dep. 15.) Because of severe nerve and tendon damage resulting from the June 26th fight at WSP, in Dr. Cheney's medical opinion, the prognosis for regaining substantial use of Plaintiff's left hand was poor. (Cheney Aff. ¶ 35.) Mr. Martin conducted initial stretches and massaging of Plaintiff's hand, but in consultation with Dr. Cheney, determined Plaintiff

would participate in physical therapy through a self-directed "home exercise program," delineated in the medical records from that date as HEP, rather than having weekly meetings with a physical therapist. (Med. Rec. 24; Cheny Aff. ¶¶ 36-37; Pl.'s Dep. 15.) Plaintiff agrees he was given exercises to perform on his own but also maintains he was told during that meeting that he would receive in-person physical therapy every Tuesday and Thursday. (Doc. no. 51-1, Revere Aff. ¶ 38; Pl.'s Dep. 15.) Plaintiff has never contested he was instructed on how to conduct self-therapy, but he maintains the self-therapy was not good enough for him. (Pl.'s Dep. 31.)

After that August 7th evaluation, Dr. Cheney and other TSP medical personnel "observed" Plaintiff when they conducted weekly rounds. (Cheney Aff. ¶ 42.) The records documenting the weekly rounds list a date, time, and name of medical personnel conducting the observation, but the records do not state, what, specifically the person observed with respect to any particular medical issue. (Med. Rec. 26-31; Cheney Aff. ¶ 63.) Although not documented in the medical records, Dr. Cheney recalls, and Plaintiff agrees, Dr. Cheney evaluated Plaintiff's hand on approximately September 21, 2012, and explained Plaintiff needed to continue performing his self-directed physical therapy. (Cheney Aff. ¶ 47; Pl.'s Dep. 16-17.) One week later, on September 26, 2012, the medical records show Dr. Cheney checked on Plaintiff's progress and again instructed Plaintiff on how to perform the self-directed physical therapy exercises. (Cheney Aff. ¶¶ 48-49; Med. Rec. 32.)

Plaintiff temporarily transferred to Fulton County for criminal proceedings on October 4, 2012, and returned to TSP on October 11, 2012. (Pl.'s Dep. 17.) Upon his return, he was housed in the medical department until, at Plaintiff's request and without involvement

6

from Dr. Cheney, he was moved on October 16, 2012, because it was too cold for him in the medical department. (Pl.'s Dep. 17-22; doc. no. 11, pp. 10-11.) Plaintiff believes he was placed in the medical department because the receiving nurse at TSP allowed Plaintiff to see a physical therapist, and they notified Dr. Cheney that direct physical therapy rather than self-directed therapy was necessary. (Pl.'s Dep. 18-19.)

Dr. Cheney does not recall ever being notified that Plaintiff had a consultation with a physical therapist upon his return to TSP or that Plaintiff had been scheduled for any additional physical therapy. (Cheney Aff. ¶¶ 50-52.) There is no dispute, however, that TSP went on lockdown on October 11th because a correctional officer had been killed by an inmate, and Plaintiff did not receive any direct physical therapy during the five days he was housed in the medical department. (Pl.'s Dep. 20-22.) At no time during Plaintiff's stay in medical did Dr. Cheney's medical opinion change insofar as his belief that "the previously prescribed self-directed physical therapy was a medically adequate form of physical therapy and proper treatment for Plaintiff's physical condition." (Cheney Aff. ¶ 55.)

After Plaintiff moved from the medical department back to the F-2 dormitory, the weekly observations of Plaintiff continued, again with no specific indication of what was observed, and appointments were scheduled for Plaintiff to meet with Dr. Cheney on November 1 and 5, 2012. (Id. ¶¶ 56, 57; Med. Rec. 27-28, 33.) The November 1st appointment was rescheduled because of security problems in Plaintiff's dormitory, and the November 5th appointment was rescheduled because Plaintiff was not in his cell at the appointed time. (Med. Rec. 33; Cheney Aff. ¶ 57.) On November 8, 2012, Plaintiff flooded his cell to express his dissatisfaction with not receiving in-person physical therapy, and a

7

nurse practitioner evaluated his hand that day, again instructing Plaintiff on the self-directed physical therapy. (Med. Rec. 34; Pl.'s Dep. 23; Cheney Aff. ¶ 58.)

On November 27, 2012, Dr. Cheney evaluated Plaintiff's hand, and after assessing the flexion in the remaining fingers on Plaintiff's left hand, determined his condition had worsened. (Med. Rec. 35.) Dr. Cheney concluded the deterioration occurred because Plaintiff was non-compliant with the self-directed physical therapy. (Cheney Aff. ¶ 60.) Dr. Cheney believed the self-directed program, if properly performed by Plaintiff, was adequate treatment. (Id. ¶ 61.) Plaintiff maintains that a physical therapist accompanied Dr. Cheney on the November visit and stated, "It's shot," which Plaintiff interpreted to mean "it's over with." (Pl.'s Dep. 27.) Dr. Cheney provided "extensive instruction on remediation" during the November 27th evaluation, but in a follow-up examination on December 13, 2012, Dr. Cheney observed Plaintiff had not shown much progress and believed the lack of progress to be the result of Plaintiff failing to perform the self-directed physical therapy exercises. (Cheney Aff. ¶¶ 62-65; Med. Rec. 36.)

On December 18, 2012, Dr. Cheney again evaluated Plaintiff's hand, noting not much change from the December 13th evaluation but also that Plaintiff had reported a more limited range of motion than normal. (Cheney Aff. ¶ 67; Med. Rec. 37-39.) At that point, Dr. Cheney made a consultation request for Augusta State Medical Prison, but on December 19, 2012, Plaintiff was transferred to SSP. (Cheney Aff. ¶¶ 68-69; Med. Rec. 38-39; Pl.'s Dep. 28.) The transfer was administrative, controlled by Central Office personnel for the Department of Corrections, not by Dr. Cheney. (Cheney Aff. ¶ 70.) Upon his transfer to SSP, Plaintiff ceased to be under Dr. Cheney's care. (Id. ¶ 71.)

8

On March 18, 2013, Plaintiff fell at SSP coming out of the shower, aggravating the injury to his left hand, but he refused treatment of his hand, against medical advice. (Med. Rec. 40-41.) On May 14, 2013, medical personnel at SSP evaluated Plaintiff for physical therapy for his left hand, and he received physical therapy treatments by outside physical therapists from May 20, 2013, through August 28, 2013. (Med. Rec. 42-70.) Plaintiff was discharged from physical therapy because he had achieved his maximum potential. (Id. at 44.) Plaintiff agrees his hand reached its maximum potential and is functioning as well as it ever will following his injuries from the fight at WSP. (Pl.'s Dep. 28-29.) Plaintiff maintains medical personnel at SSP told him "more should have been done" for him with respect to face-to-face physical therapy, (Pl.'s Dep. 31), but there is no medical documentation or affidavits from any SSP personnel in the record to support this assertion.

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving

9

party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Deliberate Indifference Standard

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir.

2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must show that person: (1) was subjectively aware of a serious risk of harm, (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence." Id. at 1326-27.

Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

11

intolerable to fundamental fairness.  Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).  That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment.  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . .").  "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).

### C. Dr. Cheney Is Entitled to Summary Judgment Because Plaintiff Merely Has a Disagreement with Him over the Course of Treatment Prescribed.

Conceding for his motion that Plaintiff's injuries to his left hand constitute an objectively serious medical need, (doc. no. 48-1, p. 15), Dr. Cheney argues no reasonable person could find that the medical care rises to the level of deliberate indifference.  Because the "Eighth Amendment did not compel [Dr. Cheney] to check his own medical training and judgment at the door, simply because he was informed that some other doctor at some other

time had prescribed" a different type of physical therapy for Plaintiff, summary judgment for Dr. Cheney is appropriate. See Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007).

The undisputed facts show Dr. Cheney was not responsible for the treatment provided immediately after Plaintiff's fight at WSP. Rather, when Plaintiff arrived at TSP, Dr. Sutker had completed the surgery, and Plaintiff was wearing a cast. (Pl.'s Dep. 12; Med. Rec. 15-16.) Immediately upon his arrival on July 19, 2012, Plaintiff was examined and given pain medication. (Med. Rec. 18.) Dr. Sutker removed the cast and staples on July 30th, and wrote a Therapy Script containing no specific list of exercises or therapy activities. (Id. at 21-22.) Dr. Cheney received Dr. Sutker's Therapy Script on August 2, 2012, and less than one week later, he and a physical therapist examined Plaintiff's hand on August 7th. (Id. at 24; Cheney Aff. ¶ 33; Pl.'s Dep. 15.)

At the August 7th examination, Dr. Cheney formed the medical opinion, based on an exercise of his professional judgment, that Plaintiff's prognosis for regaining substantial use of his left hand was very poor because of the severe nerve and tendon damage from the injuries sustained during the fight at WSP. (Cheney Aff. ¶ 35.) The physical therapist conducted initial stretches and massaging of Plaintiff's hand, but in consultation with Dr. Cheney, determined Plaintiff would participate in physical therapy through a self-directed "home exercise program," rather than having weekly meetings with a physical therapist. (Med. Rec. 24; Cheney Aff. ¶¶ 36-37; Pl.'s Dep. 15.) Plaintiff agrees he was given exercises to perform on his own but also maintains he was told during the August 7th meeting that he would receive in-person physical therapy every Tuesday and Thursday. (Doc. no. 51-1, Revere Aff. ¶ 38; Pl.'s Dep. 15.)

13

There is a dispute as to how often Plaintiff's hand was checked by TSP medical personnel between August 7th and September 21, 2012, but that dispute is not material. Even if the Court presumes Plaintiff's hand was not checked during the documented weekly rounds, (Med. Rec. 26-28), both sides agree Dr. Cheney saw Plaintiff and evaluated his hand on approximately September 21, 2012 (Pl.'s Dep. 16; Cheney Aff. ¶ 47.) At that time, Dr. Cheney explained Plaintiff needed to continue performing his self-directed physical therapy. (Cheney Aff. ¶ 47; Pl.'s Dep. 16-17.) One week later, on September 26, 2012, Dr. Cheney checked on Plaintiff's progress and again instructed Plaintiff on how to perform the self-directed physical therapy exercises. (Cheney Aff. ¶¶ 48-49; Med. Rec. 32.)

Plaintiff left TSP on October 4, 2012, to attend court in Fulton County, and upon his return on October 11, 2012, Plaintiff was assigned to stay in the medical department. (Pl.'s Dep. 17-22; doc. no. 11, pp. 10-11.) There is a dispute between the parties as to why Plaintiff was told he would be staying in the medical department, but again, the dispute is not material. Although Plaintiff maintains he was told by someone other than Dr. Cheney he would be staying in medical because he needed face-to-face physical therapy, Dr. Cheney knew nothing about this. (Cheney Aff. ¶¶ 50-52; Pl.'s Dep. 18-19.) To the contrary, Dr. Cheney continued to believe the self-directed therapy, if performed by Plaintiff, was the appropriate course of treatment. (Cheney Aff. ¶ 55.) In any event, because of the prison lockdown and Plaintiff's request to move, he never received any in-person physical therapy during the five days he stayed in the medical department. (Pl.'s Dep. 19-20.)

Plaintiff argues he was promised physical therapy even though he left the medical department, and he disputes the reason he was told why he did not receive that therapy.

14

(Pl.'s Dep. 21, 26.) But the reason someone other than Dr. Cheney may have told Plaintiff he was not receiving face-to-face physical therapy is not material because Dr. Cheney never changed his professional opinion that self-directed therapy was appropriate. (Cheney Aff. ¶¶ 53, 55.) Although the record shows Dr. Cheney had appointments scheduled with Plaintiff on November 1st and 5th, there is no dispute those appointments were cancelled because of security concerns and Plaintiff's absence from his cell at the appointment time. (Id. ¶ 57; Med. Rec. 33.) However, a nurse practitioner examined Plaintiff's hand on November 8, 2012, and again instructed Plaintiff on how to perform his self-directed therapy. (Cheney Aff. ¶ 58; Med. Rec. 34; Pl.'s Dep. 23.)

When Dr. Cheney examined Plaintiff's hand on November 27, 2012, and assessed the flexion in his fingers, he determined Plaintiff's condition had worsened. (Med. Rec. 35.) Dr. Cheney concluded the deterioration occurred because Plaintiff was non-compliant with the self-directed physical therapy. (Cheney Aff. ¶ 60.) Dr. Cheney also provided "extensive instruction on remediation" during the November 27th evaluation. (Id. ¶ 61.) In a follow-up examination on December 13, 2012, Dr. Cheney observed Plaintiff had not shown much progress and determined it was because Plaintiff failed to perform the self-directed physical therapy exercises. (Cheney Aff. ¶¶ 62-65; Med. Rec. 36.)

On December 18, 2012, Dr. Cheney again evaluated Plaintiff's hand, noting not much change from the December 13th evaluation but also that Plaintiff had reported a more limited range of motion than normal. (Cheney Aff. ¶ 67; Med. Rec. 37-39.) At that point, Dr. Cheney made a consultation request for Augusta State Medical Prison, but on December 19, 2012, Plaintiff was transferred to SSP. (Cheney Aff. ¶¶ 68-69; Med. Rec. 38-39; Pl.'s Dep.

15

28.) The transfer was administrative, controlled by Central Office personnel for the Department of Corrections, not by Dr. Cheney. (Cheney Aff. ¶ 70.) Upon his transfer to SSP, Plaintiff ceased to be under Dr. Cheney's care. (Id. ¶ 71.)

Plaintiff did not begin to receive face-to-face physical therapy until approximately five months after his arrival at SSP, and approximately two months after he sustained additional injury to his hand after falling in the shower. (Med. Rec. 40-41, 68.) Upon completion of that therapy, the medical records show, and Plaintiff agrees, his hand had reached its maximum potential. (Med. Rec. 44; Pl.'s Dep. 28-29.)

Even if the Court draws every inference in Plaintiff's favor that he only saw Dr. Cheney on August 7, September 21, and November 27, 2012 (Pl.'s Dep. 15, 16, 27; doc. no. 51, p. 58), there is no evidence showing deliberate indifference by Dr. Cheney. Exercising his professional judgment, Dr. Cheney formulated a treatment plan for Plaintiff and explained the proper procedure for performing the self-directed therapy. (Cheney Aff. ¶ 37.) The first instruction on this therapy came within a week of Plaintiff having his cast removed, and on Dr. Cheney's subsequent evaluations of Plaintiff's hand, he continued to believe until December 18, 2012 that, if performed, the self-directed therapy was an appropriate course of treatment for Plaintiff. (Cheney Aff. ¶¶ 37, 55, 60, 61, 65, 68.) Plaintiff concedes he received this instruction, he simply disagreed it was sufficient. (Pl.'s Dep. 31.)

However, as explained above and repeatedly applied in the Eleventh Circuit:

> A plaintiff cannot establish deliberate indifference simply by second guessing the conclusions reached by a prison medical official in the exercise of his medical judgment. Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an

16

appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Bismark, 213 F. App'x at 896.

Plaintiff's cases cited in his opposition briefing are inapposite because they address situations in which a plaintiff was not provided any medical care when it was immediately apparent such care was needed. (Doc. no. 51, pp. 30-33.) Here, in contrast, medical care was provided, just not the type Plaintiff wanted. Importantly, the defendants in Plaintiff's cases were not doctors basing their decisions on professional, medical judgment. For example, in Brown v. Hughes, 891 F.2d 11533, 1537 (11th Cir. 1990), prison guard defendants were not entitled to summary judgment because there was a genuine dispute over whether they knew about the plaintiff's broken foot but intentionally delayed treatment.

In Thomas v. Town of Davie, 847 F.2d 771, 773 (11th Cir. 1988), the court determined a complaint should not have been dismissed without first granting leave to amend where the plaintiff alleged two police officers did not obtain treatment for a person who had just been in a car accident and was in obvious need of immediate medical attention. As one final example, in Hewett v. Jarrard, 786 F.2d 1080, 1086-87 (11th Cir. 1986), a detention center supervisor denied medical treatment for three days for punitive, non-medical reasons. None of these cases correspond to the current case where Dr. Cheney, in an exercise of his professional, medical judgment, prescribed a course of treatment with which Plaintiff did not agree.

Plaintiff's unsubstantiated contentions about comments from physical therapists and other medical personnel at TSP and SSP suggesting in-person physical therapy should have

17

been conducted earlier does him no good. Not only would such comments merely suggest a difference in professional opinion, which as described above is not a basis for Eighth Amendment liability, but there is no evidence in the record to substantiate such claims.

Plaintiff's care in this case has not been so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. <u>Harris</u>, 921 F.2d at 1505. Plaintiff simply disagrees with the chosen course of treatment prescribed by Dr. Cheney, a doctor who exercised his professional medical judgment to evaluate Plaintiff's hand and formulate a treatment plan. Such a disagreement cannot form the basis for a deliberate indifference claim. <u>Harris</u>, 941 F.2d at 1505; <u>Waldrop</u>, 871 F.2d at 1033; <u>Smith</u>, 375 F. App'x at 910.

As Dr. Cheney aptly summarizes,

> As Plaintiff's Brief, Plaintiff's deposition testimony and the undisputed material facts make clear, Plaintiff's claim is, in essence, that [Dr. Cheney] prescribed one course of treatment – the self-directed physical therapy program – when he should have prescribed another – physical therapy conducted through weekly meetings with a physical therapist. Thus, Plaintiff's claim is akin to a claim that [Dr. Cheney] acted with negligence or medical malpractice and is nothing more than a "course of treatment" claim.

(Doc. no. 53, p. 13.)

Thus, under the undisputed facts and Plaintiff's version of the disputed facts, no reasonable juror could find the treatment provided by Dr. Cheney at TSP violates the Eighth Amendment, and summary judgment should be granted to Dr. Cheney.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED**, (doc. no. 48), a final judgment be **ENTERED**

in favor of Dr. Cheney, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of August, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA